Could we hear from the parties in Deruzza v. Lanza? May it please the Court, my name is Amy Bellantoni and I represent the appellant Matthew Deruzza. The District Court's granting of summary judgment in this case was improper because there remained genuine issues of material fact to be determined by a jury. With respect to this substantive due process claim, the District Court ignored the majority of the evidence in the record that pointed to explicit affirmations by the defendants and a condoning of Detective Carroll's conduct such that it created and enhanced the risk of danger to Mr. Deruzza, to Officer Deruzza. Beginning as in Oaken, with the first incident on September 1, 2013, when Detective Carroll kicked in Officer Deruzza's home door and began assaulting him, from that point in time the response from the defendants indicated to Detective Carroll that he had the green light to do whatever he wanted to do to Officer Deruzza from that point on. The evidence in the record demonstrates that when interviewed by Chief Leahy, Detective Carroll was told specifically by the chief of his department, I can't control what you do outside of this department, essentially giving Detective Carroll the green light again. Detective Sergeant Lanza removed Police Officer Scarborough from his position as the officer who would have generated the report on the burglary and the assault and the criminal mischief on September 1, after Officer Scarborough made comments that in fact a felony, a burglary had occurred, that the evidence pointed to the commission of a felony. The only time there was physical violence was the fight on September 1, right, the first incident? That was the, yes, that is the only evidence of actual physical violence. That was the first time there was any kind of an encounter. I gather you agree that the defendants can't be held responsible for the injury sustained? I will agree that they cannot be held responsible for the actions on September 1. What is there after that? In other words, this is not a continued violence case where violence was continued to be inflicted on the plaintiff. What are you trying to hold the defendants responsible for, the harassment? Yes, so subsequent to September 1, there was no physical violence, Your Honor, but I think the court can absolutely appreciate that the type of damage that is inflicted on a person is not only physical. And for the additional information. The question here is the emotional damages. Your emotional distress claim, because indeed the physical injury you would have to pursue is a battery. And the question is how does this rise to the extreme level? I mean, the New York Court of Appeals has noted that if the case is to reach it, it has never recognized an extreme infliction of emotional distress claim. Oh, yes. I will concede that there is a very high burden with the intentional infliction. So how is it that what happens after the physical fight that you've described rises to the level of intentional infliction of emotional distress, given that high burden? So adjusting my focus now from the increased risk of danger in the substance of claim, with respect to the state cause of action, they're the same allegations. And they're all charged in acting in concert. So the chief of the department and Detective Sergeant Lanza, by their actions and condoning explicitly the behavior that took place between 2013 and for the following year, by creating false entries in an official police report describing Officer DeRuza and Detective Carroll as mutual combatants, by failing to turn over evidence of a tape recording of admissions of Detective Carroll to the district attorney's office in connection with the prosecution of Detective Carroll, by allowing a false complaint. There was discipline imposed. There was even a criminal charge filed. He was suspended and was placed on modified duty. And that's all undisputed, right? It doesn't undercut the outrageous conduct argument? Well, Detective Carroll was not suspended and his gun was not removed until August of 2014, and that was after all of the incidents described in the record, after being told on August 2nd of 2014 that he was going to incur a two-day rip for vacation day, two vacation days as a result of an incident that happened back in June, and further being told by the chief, stay away from Officer DeRuza. And he went from that point on over to Officer DeRuza's home and sat outside of his home, disregarding again, based on the conduct of the chief and the detective sergeant that preceding year. He was not deterred, and they knew he was not deterred. And the point being is that essentially for my client to have started dating Detective Carroll's estranged wife was a problem in the department. It was frowned upon. And because of that circumstance, they essentially turned their back, they turned a blind eye, and they gave Detective Carroll the green light to do whatever he wanted to. And for that year, he tortured, mentally tortured my client. There were repeated disciplinary actions taken against the defendant. I mean, he lost vacation days. He was put on modified duty. He had to surrender his firearm. You don't think those are adequate, but they hardly equate to giving someone a green light to do whatever he wants. He's basically being disciplined for some of the conduct. So, but after committing a felony in September, two days after... A felony being the battery? The burglary. He kicked, my client was home vacuuming in his underwear. There is an action for that, and that's why you have to pursue it that way. Go ahead. Go ahead. So the police department, after the felony had been committed, told Detective Carroll, I can't control what you do. So they not only took no police action, they took no administrative action against him in connection with that incident. They told him to stay away from Officer DeRosa, but yet, less than three weeks later, he had gone out and bought a hat that said bully on it and came back into the department, right in the chief's face and Detective Lanza's, you know, disregarding everything they had said to him, and continued to harass and threaten. There were many threats to kill my client. And really, if he had gone through with them, which would be an issue of damages, I would think we'd be having a different discussion here. The fact that he actually did not have any additional physical harm should not take, that's a damages issue, respectfully. That shouldn't take away from the fact that the risk was enhanced, the risk of harm to my client was enhanced by the affirmative comments and statements made by the chief and Detective Carroll. I think it shocks the conscience that no greater discipline was imposed. I think it shocks the conscience when you take a broad view, which the district court did not. It did not mention a tenth of the incidents that occurred here. I think it shocks the conscience when you consider, as you did in Oken and in Pierce, the emotionally charged circumstances in domestic violence situations, that you have a detective who is a police officer with a gun. Do you think that threats should be considered equivalent to actual violence? I think when they are looking at the broad picture here of the domestic circumstances, the emotionally charged circumstances, that you have an individual who is disregarding his, not only the police department, but his direct employer, and continuing to stalk my client and make threats. You can only guess as to whether he's going to carry them out. But the focus here is whether the risk was increased, whether what they did and deliberately failed to do by turning a blind eye, did that increase the risk of harm to my client? Not whether it actually caused him harm, but did it increase the risk? And it shocks the conscience based on what the court is aware of with domestic violence circumstances, with murder suicides, with jealous boyfriends killing their ex-wives, former husbands, and vice versa. It's a serious consideration that was not taken seriously by the district court or the department. Thank you. Thank you. We'll hear you again on rebuttal. Good morning, Your Honors. May it please the Court, my name is Michael Frankel. I represent the defendant Apalis, Chief of Police Christopher Leahy, Detective Sergeant Lanza, and Lieutenant Falcone. The district court properly granted summary judgment in this case because Officer DeRouza cannot establish that any of the three individual defendants affirmatively created or enhanced the risk of private violence. Just to briefly address some of the statements that Ms. Bellantoni made. During the incident of September 1st, 2012, Ms. Bellantoni's papers repeatedly referenced an alleged crime that was committed. The important fact on that date is that Officer DeRouza explicitly requested that no charges be filed on that date against Detective Carroll. He said in his deposition and during the trial of Detective Carroll in this matter that he didn't want charges against Detective Carroll to be filed because it would have impacted his relationship with Cat Carroll and her children. So, pursuant to his wishes, no charges were filed. What the department did do on that date, as it did whenever there was a complaint, was to fully investigate all the complaints and take appropriate actions as they deemed necessary. Another flaw with the appellant's arguments is that in her brief, they consistently refer to the quote-unquote village defendants. In this case, there are three separate individual defendants whose actions all must be considered separately. And what, if anything, did each of them do to have some type of constitutional deprivation against the appellant? So, taking that standard, there's basically no allegations that were adduced during this case against Lieutenant Falcone. He was at the September 1st, 2012 incident. He was also at an incident in June of 2013 where there was a, according to Mr. DeRouza, a four minute conversation between himself and Detective Carroll. Lieutenant Falcone happened to be there at the fair that day and witnessed some type of communication between the two of them. When he approached the two of them about the conversation, he asked Officer DeRouza, is everything okay? Officer DeRouza said yes. And that was really the extent of Lieutenant Falcone's involvement. As far as Chief Lakey, whenever there was a complaint brought to his attention regarding Officer DeRouza and Detective Carroll. He ordered investigations be conducted. When the investigations concluded that there were violations of department rules and regulations, he administered discipline as he deemed appropriate. But didn't Chief Lakey also say, when he met with Carroll, that I can't control everything that Carroll and DeRouza do off-duty. I suggest they stay away from each other. I think I can control what they do in the department. Is it not an invitation to take your fight off duty and proceed as you want? It seemed quite passive, maybe even to condone the ongoing friction between them and maybe even the threats. Sure, Your Honor. So that occurred after the investigation during the September 1st, 2012 incident. Chief Lakey said he spoke both with Detective Carroll and Officer DeRouza, basically told them that he didn't want this kind of conduct going on within the department. He did tell, allegedly, Detective Carroll that he couldn't control everything he did outside of the department, which is true. The due process clause doesn't guarantee anyone a minimum level of safety or security. But Chief Lakey- That seemed particularly passive for a chief of police to dealing with his own two staff members who are fighting in a way that seems quite possible to escalate, to just say I can't control what you do out of the department. Well, no, Your Honor, because after that one incident, what the chief did was he did order an investigation as to what happened. Bear in mind, too, that while Officer DeRouza's contention is that there was a felony, an eyewitness and Detective Carroll certainly had a different view of what happened. So the police department, in their investigation, had to consider everyone's views about what happened. There was a 911 caller that day, which is how the police learned of the incident. The 911 caller said that Officer DeRouza, in her words, was killing some person and he was swinging through the door with, in her words, a bat, turned out to be an aluminum cane. So based on what happened in that situation, the chief spoke to his officers. And in his view, he thought everything was over, and it essentially was. All that happened at that initial incident, which, Your Honor is correct, is the only incident where there's any evidence of violence. Approximately a month later, Detective Carroll came into the department wearing a hat with the word bully on it, and said in a voice near Officer DeRouza, I'm a bully. Nothing else happened after that for eight months until this incident in the Maronick, where there was again this brief conversation between the two of them, where Officer DeRouza said he was okay. The only other incident that happened after that was on August 2nd and 4th, where Officer DeRouza says that Detective Carroll was outside of his house. Mind you, Detective Carroll and his partner, who lived three doors down from Officer DeRouza, said that Detective Carroll was there those three days to visit his partner. Nonetheless, August 4th is the first time Officer DeRouza ever requested that charges be filed against Detective Carroll. And in fact, charges were filed against Detective Carroll. The charges were eventually not sustained by City Court Judge Eric Press. But the village did essentially everything that Officer DeRouza requested that the village do. He was only concerned that the discipline imposed in his mind wasn't sufficient to stop the conduct. But that in and of itself cannot sustain a due process violation. And I think what's also important in this case, in terms of the shot to conscious test, is that in order to have a shot to conscious standard, there has to be some type of intentional or reckless conduct, not just negligent conduct. So even if the chief of police theoretically should have imposed additional discipline, that certainly wasn't intentional conduct at all. And during the trial of Detective Carroll, the judge viewed the same evidence as is before the district court judge and your honors in this case as far as the four incidents between Officer DeRouza and Detective Carroll. The judge in that case said that he described the conduct first of all as juvenile and conduct of 15 year olds. He also significantly said, and this is on the sealed appendix, it's on page 301 and 308. He said that the incidents between the initial incidents in September and the last incident in August, so all the words that were exchanged, there was no reasonable view that those words would have led to a physical altercation. So certainly from the department's perspective, their actions were entirely reasonable, particularly based on what a judge, viewing the evidence, also found. Thank you. Thank you, your honors. Bellantoni, you did reserve some time for rebuttal. I'm sorry, I apologize, Mr. Finkle, of course. Thank you, Judge, may it please the court? No problem, Judge, thank you. Richard Finkle for Detective Richard Carroll. Detective Carroll, as the court is aware, made a pre-answer, pre-joined their motion to dismiss pursuant to Rule 12B6. That motion was granted. We raised multiple grounds, some of which I've heard a little bit about during the course of the presentation. The ground that was accepted was that Detective Carroll was not named as a respondent in a notice of claim. That would require the court to ascertain or reconcile a split in authority. So I don't think this is the case for you to do that, so I'm going to move on to the other grounds which were raised and preserved. I would note at the outset, probably the best place to start on this one is at the end. If you dismiss the remaining federal claim against the existing defendants, there's only a state law claim against my client. He is the only remaining defendant that has the intentional infliction of emotional distress pending against him. So if you dismiss the remaining federal claims, I would imagine under United Mine Workers and Castellano and Robeson that you would dismiss the state law claim against my client as well. That would be without prejudice to pursuing it in the state court. Granted. You're satisfied with that? I mean, you secured a complete dismissal in the district court. I thought you were defending that. Well, if you decline jurisdiction, then I have a statute of limitations argument. And the law is well settled that the only actions that the court would review for statute of limitations purposes are those that occurred on August 2nd and August 4th. Detective Carroll is alleged to have been sitting outside on the street, in his car, in front of Detective Carroll's house or in the vicinity of Detective Carroll's house. Given the high threshold of an intentional infliction, the high standard that the Court of Appeals and the New York Court of Appeals do not constitute, they do not meet the threshold for such a claim. So you don't have any timely acts, and we have a statute of limitations defense, even if it was without prejudice. What if we don't, what if we're not persuaded by the statute of limitations defense? What's your view on the totality of the intentional infliction claim? Well, as the court has said during the earlier argument, the New York Court of Appeals has never had an intentional infliction of emotional distress come before it and allow it to go forward. These claims are just not egregious enough, and again, that ties into the statute of limitations. Even if there's a continuing violation, the New York law is well settled that you have to restrict your review to the timely allegations before you can reach back. The timely allegations in and of themselves do not establish the crime of the offense of intentional infliction of emotional distress. Well, what do you think is not serious enough? I mean, there was a physical altercation and then there was the trespass. I mean, I thought the argument was that those two actions are cognizable in other torts. And it's for that reason that New York does not allow intentional infliction of emotional distress when the conducted issue is cognizable in another tort. Because you're absolutely correct, there are multiple grounds for dismissal here, multiple grounds for affirmance, that's one of them. That particular allegation in and of itself, as I've said, is also precluded by the statute of limitations that occurred more than one year and 90 days before the action was commenced. Having we said, though, that the statute begins to run only after the conduct ceases, and this was an ongoing course of conduct over a year. As the case law in our brief is very clear on the state law, if you were to apply the continuing violation doctrine, your analysis would be restricted to the timely allegations for purposes of the statute of limitations. So those allegations that occurred within 90 days of filing the notice of claim. If those two allegations in and of themselves are not sufficient to establish the tort, the intentional tort, then you don't go back. All right, thank you very much. Thank you. You're now for Ms. Bellantoni in rebuttal. I would like to bring to the court's attention that both Chief Leahy and Detective Sergeant Lanza admitted in their depositions that they had no idea whether or not Detective Carroll was going to make good on his threats to kill Officer DeRouza. So with that in mind, and with the fact and knowledge that nothing that they did or said deterred Detective Carroll, in their actions and by turning the blind eye to his conduct, created and enhanced the risk of danger to my client. With respect to counsel's statement that nothing occurred between June and August, I would just direct the court's attention to the fact that Detective Sergeant Lanza had taken the personnel complaint of Cat Carroll and Detective Carroll and essentially did no investigation at all. He did not interview the daughter. He took no additional steps to investigate whether what they said was true. He admitted in his deposition that, yes, they had a definite motive to lie and to fabricate the complaint. And even though it was found to be unsubstantiated, everything Detective Carroll told Detective Sergeant Lanza to do came true. He told Detective Sergeant Lanza, you gotta move him to another post, you gotta keep him away from my family. And so notwithstanding the unsubstantiated personnel complaint, Detective Officer DeRouza was assigned to one post, post six, and has been at that post since that time period. He received a disciplinary letter in his file, and they essentially did what the court didn't and couldn't do with an order of protection, they told him not to have any contact at all. So essentially imposing their own stay away order of protection. And that can only serve to further embolden Detective Carroll and increase the risk of danger to my client. Thank you very much. Thank you. Thank you to both sides. We're going to take the case under advisement.